**NOT FOR PUBLICATION**

```
                  UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY


                                  :
ROGELIO REYES,                    :
                                  :     Civil No. 05-2136 (JBS)
              Petitioner,         :
                                  :
         v.                       :
                                  :     MEMORANDUM OPINION
WARDEN JOHN NASH,                 :
                                  :
              Respondent.         :
                                  :
```

**APPEARANCES:**

    ROGELIO REYES, Petitioner <u>pro se</u>
    #42355-054
    F.C.I. Fort Dix
    P.O. Box 38
    Fort Dix, New Jersey 08640

    DOROTHY J. DONNELLY, ESQ.
    United States Attorney's Office
    402 East State Street, Suite 430
    Trenton, New Jersey 08608
    Counsel for Respondent

**SIMANDLE, District Judge**

    This matter is before the Court on petitioner Rogelio Reyes' ("Reyes") application for habeas corpus relief under 28 U.S.C. § 2241, challenging the loss of 27 days good conduct time, imposed upon him as a disciplinary sanction for committing Prohibited Act 297, a third party call, on October 24, 2004. It appears that Reyes seeks restoration of his good conduct time and expungement of the incident report.

The named respondent, Warden Nash at FCI Fort Dix, filed an answer to the petition on or about August 3, 2005. The Court has reviewed all documents submitted and, for reasons now discussed, will deny this petition for lack of merit.

## BACKGROUND

At the time the alleged disciplinary infraction occurred, Reyes was confined at FCI Fort Dix in Fort Dix, New Jersey, serving a 108 month prison term for conspiracy to distribute and possession of five kilograms of cocaine, in violation of 21 U.S.C. § 12, as imposed by the United States District Court for the Southern District of New York on May 4, 2001. His projected release date is June 5, 2006.

On November 3, 2004, a FCI Fort Dix correctional officer reviewed a monitored telephone call that Reyes had placed on October 24, 2004. The telephone monitoring report states that Reyes had placed a call to a female, who told Reyes that a person had just left but she would get the other person on the line so that Reyes could talk to him. Reyes had responded affirmatively and the woman put him on hold. She then came back on the line and told petitioner that the friend was there. The report states that a phone rang to a third party who answered it. The woman then said, "I'm going to let you guys talk, okay?" Reyes responded "okay, that's fine", and he talked to the third party briefly before hanging up the phone. (Declaration of Darrin

Howard, dated August 1, 2005, ("Howard Decl."), Exhibit A, Part V).

An incident report was made, citing petitioner for violation of Code 297, the prohibited act of "use of a telephone for abuse other than criminal." See 28 C.F.R. § 541.14.  Reyes was given the incident report on November 4, 2004, constituting advance notice of the charge, and a hearing was scheduled for November 7, 2004 before the Unit Disciplinary Committee ("UDC").

At the UDC hearing, Reyes stated that he was unaware that the woman was placing a third party telephone call.  He alleges that he thought the third party had been there and just left, and that the woman was just going to get him and put him on the line. The UDC referred the matter to a Disciplinary Hearing Officer ("DHO"), as required by regulation, based on the severity level of the disciplinary charge.  At the end of the UDC hearing, Reyes was advised of his rights before the DHO, that he had the right to have a staff representative at the DHO hearing and that he could call witnesses and present documentary evidence at the hearing.  The DHO report discloses that Reyes waived his right to a staff representative and did not call any witnesses.  (Howard Decl., Ex. A, Part III).

A hearing was held on November 10, 2004 before DHO Steven T. Morton at FCI Fort Dix.  Reyes admitted placing the call to the woman, but denied that he knew she was placing a three way call.

3

He did not provide any witnesses or other evidence, but merely asked that the DHO review the taped conversation.  Reyes maintained that the tape recording would prove that he did not know a three way call was being placed and that he immediately hung up when he realized that a third party call had been placed.

The DHO allegedly declined to listen to the taped recording of the telephone conversation.  Instead, based solely on the findings set forth in the telephone monitoring report and incident report, the DHO determined that Reyes had committed the prohibited act.  Specifically, the DHO found that it was obvious that the call was a three way phone call and that the parties involved in the call were aware of it.  (Howard Decl., Ex. A, Part V).

The DHO further noted that the prohibited act as violated by Reyes, namely, a third party call, shows a disregard for the rules and regulations, and circumvents the BOP's ability to properly monitor inmate telephone calls since the third person with whom the inmate is speaking cannot be identified.  The following sanctions were imposed: (1) loss of 27 days good conduct time; (2) loss of telephone privileges for 365 days; and (3) disciplinary segregation for 30 days.  (<u>Id</u>. at Parts VI and VII).

4

A written decision/report was prepared on November 23, 2004, which included a statement of petitioner's appeal rights. The report was served on Reyes that same day.

Reyes appealed the DHO's decision to the Bureau of Prisons ("BOP") Northeast Regional Office on December 3, 2004, as required under 28 C.F.R. § 541. Reyes argued in his appeal that the taped telephone conversation should have been reviewed because it would have shown that Reyes was unaware that a three way call had been made. He also conceded that, at most, he violated a lesser offense. This appeal was rejected on December 8, 2004 because Reyes did not submit the requisite number of copies. Reyes was given 10 days to resubmit his appeal. He did not do so until December 23, 2004 and the Regional Office rejected the appeal as untimely.

On February 7, 2005, Reyes filed an appeal with the BOP's Central Office, which was rejected based on the Regional Office's decision.[1] In this appeal, Reyes admits that he heard ringing on

---

[1] Respondent does not argue that Reyes did not timely pursue his administrative remedies, set forth at 28 U.S.C. § 542.10 et seq., to appeal the DHO's decision. Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies. See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973). The exhaustion doctrine promotes a number of goals:

   (1) allowing the appropriate agency to develop a

the phone line, but thought that it was the institution ringing through on another line. In neither appeal papers filed by Reyes did he contend that he was denied any requested witness at his DHO hearing.

## II. CLAIMS PRESENTED

Reyes raises the following claims in his petition:

Ground One. Petitioner's constitutional right to due process was violated because he was not given the opportunity to

---

> factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000). See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996). Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals. See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

Here, it appears that Reyes attempted to exhaust his administrative remedies, but his attempts were rejected as untimely. This Court finds that any further effort by Reyes in exhausting his administrative remedies at this juncture would be futile. Moreover, a sufficient factual record has already been developed with respect to the disciplinary proceeding at issue. Accordingly, for the most part, the purposes of the exhaustion requirement do not readily apply in this case, and the Court will review the merits of Reyes's petition rather than dismiss it on this procedural ground.

call witnesses or present affidavits from them at his DHO hearing, and that the weight of the evidence did not prove that he participated in a three way telephone call.

Ground Two.  The sanctions imposed were excessive and violated his constitutional right against cruel and unusual punishment.

### III.  DISCUSSION

A.  Standard of Review

Reyes seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3).  That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

B.   <u>Applicable Regulations</u>

The Bureau of Prisons ("BOP") has specific guidelines for inmate disciplinary procedures, which are codified at 28 C.F.R. § 541.10 <u>et</u> <u>seq</u>.  Prohibited acts are categorized according to the severity of the conduct.  Code Level 100s are deemed the "Greatest", code level 200s as "High", and proceeding to 400 level codes as "Low Moderate."  The Prohibited Acts Code and Disciplinary Severity Scale is set forth at 28 C.F.R. § 541.13 Tables 3-5.  Incident reports are prepared in accordance with § 541.14 and are referred to the UDC for an initial hearing pursuant to § 541.15.

The UDC hearing is typically conducted within three working days of the incident, but may be extended for good cause pursuant to § 541.15(b) and (k).  The UDC may refer the matter to the DHO for further proceedings pursuant to § 541.15(f).  In this case, referral of the incident report to the DHO was mandatory under § 541.13(a)(2), because it was designated as a high category offense and the UDC does not have the authority to disallow good conduct time.  Disallowance of good conduct time credits for high category offenses, pursuant to Sanction B.1 in Table 3, must be imposed under 28 C.F.R. § 541.13(a)(2).

DHO hearing procedures are set forth at § 541.17.  These procedures require the following: (a) 24-hour advance written notice of charge before inmate's initial appearance before the

DHO; this right may be waived, § 541.17(a); (b) an inmate shall be provided a staff representative at the DHO hearing, if so desired, § 541.17(b); (c) an inmate is entitled to make a statement and to present documentary evidence at the DHO hearing; the inmate may also call witnesses to testify on his behalf, but may not himself question the witnesses, § 541.17(c); (d) the inmate is entitled to be present throughout the hearing, except during a period of deliberation or when institutional security would be jeopardized, § 541.17(d).  The DHO shall prepare a record of the proceedings that documents the advisement of the inmate's rights, the DHO's findings, the DHO's decision, the specific evidence relied upon by the DHO, and a brief statement of the reasons for imposition of sanctions.  28 C.F.R. § 541.17(g).  A written copy of the DHO's decision and disposition must be provided to the inmate ordinarily within 10 days.  Id.

These procedures are intended to meet or exceed the due process requirements prescribed by Wolff v. McDonnell, 418 U.S. 539 (1974).  See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994).

C.  Merits of Petitioner's Claims

    1.  *Procedural Due Process Claims*

The Due Process Clause of the Fifth or Fourteenth Amendments provides that liberty interests of a constitutional dimension may not be rescinded without certain procedural protections.  U.S.

CONST. amend. XIV.  In Wolff v. McDonnell, supra, the Supreme Court set forth the requirements of due process in prison disciplinary hearings.  An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals."  Wolff, 418 U.S. at 563-71.  An inmate is also entitled to an inmate representative in some cases, and a written decision by the factfinder as to evidence relied upon and findings.  See Von Kahl, 855 F. Supp. at 1418 (citing Wolff, 418 U.S. at 563-72).

    Here, Reyes asserts that he was not given the opportunity to call witnesses or present affidavit evidence at his DHO hearing.  The disciplinary report and decision show that Reyes waived his right to a staff representative and that he declined to call witnesses or other documentary evidence.  Instead, Reyes simply denied any intent or knowledge of the three way call and asked that the taped conversation be reviewed by the DHO for verification of his defense.  Notably, Reyes did not raise this claim (that he was denied the opportunity to call witnesses or present evidence) in his administrative appeals.  Based on the

record, it is clear that Reyes' allegations with respect to this claim are baseless. Accordingly, the habeas relief will be denied for lack of merit.

2. *There Was Sufficient Evidence to Support the Charge*

The Supreme Court has held that procedural due process is not satisfied "unless the findings of the prison disciplinary board are supported by some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454-55 (1985); Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991). The Supreme Court has stated:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

Hill, 472 U.S. at 456 (internal citations omitted). Moreover, the Court stated: "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." Id. at 457.

Here, there is sufficient evidence noted by the DHO in reaching his determination. The DHO's Report demonstrates that,

11

after an investigation and the DHO's consideration of all the relevant evidence, namely, the telephone monitoring report, the DHO found that the greater weight of evidence supported a finding that Reyes did commit the prohibited act in violation of Code 297. This determination was based on the DHO's finding that the conversation demonstrated that the participants in the call were aware that it was a three way phone call. The DHO's report plainly shows that it was "not so devoid of evidence that the findings of the [DHO were] without support or otherwise arbitrary." Hill, 472 U.S. at 457.

Therefore, based upon this evidence as relied upon by the DHO, and without any contradictory evidence submitted by petitioner, except his self-serving denial of intent, the Court finds that Reyes's right to due process was not violated by the determination of the DHO. The procedures enunciated in Wolff, supra, were complied with, and there was "some evidence", in accordance with Hill, supra, to support the DHO's finding of guilt. See Sinde v. Gerlinski, 252 F. Supp.2d 144, 150 (M.D. Pa. 2003)("If there is 'some evidence' to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff")(quoting Hill, 472 U.S. at 457).

3.  *Whether The Sanctions Imposed Were Excessive.*

Next, Reyes alleges that the sanctions imposed were excessive and violate his right against cruel and unusual punishment under the Eighth Amendment.

"The Eighth Amendment, in only three words, imposes the constitutional limitation upon punishments:  they cannot be 'cruel and unusual.'" Rhodes v. Chapman, 452 U.S. 337, 345 (1981).  The Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment.  Id. at 346.  "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' . . . are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991)(citing Rhodes, 452 U.S. at 346).  To state a claim under the Eighth Amendment, an inmate must satisfy an objective element, *i.e.,* that the deprivation of a basic human need is sufficiently serious, and a subjective component, that the prison officials acted with a sufficiently culpable state of mind.  Wilson, 501 U.S. at 298.

Here, the Court finds that the sanctions imposed do not rise to the level of an Eighth Amendment violation.  First, the sanctions as imposed in this case fall well within the regulatory scheme for such disciplinary offenses, see 8 C.F.R. § 541.13, and

13

are consistent with similar sanctions imposed in like situations. See Sinde, 252 F. Supp.2d at 147.

Second, these restraints (loss of telephone privileges and disciplinary segregation) plainly fall "within the expected parameters of the sentence imposed by a court of law," and do not "[impose] atypical and significant hardship on [petitioner] in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Therefore, because the sanctions imposed in this case fall well within the regulatory scheme for such disciplinary infractions, they are presumptively constitutional and do not offend the Eighth Amendment proscription against cruel and unusual punishment.

## CONCLUSION

Based upon the foregoing, Reyes's petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, will be denied for lack of merit. An appropriate Order accompanies this Opinion.


                                    s/ Jerome B. Simandle
                                     JEROME B. SIMANDLE
                                     United States District Judge

Dated: **February 15 , 2006**